## Commonwealth *versus* Wickersham.

| 90 | 311 |
| 193 | 238 |

1. The courts have no power to issue writs of mandamus to state officers.
2. No such power is conferred upon the Court of Common Pleas of Dauphin county, by the Act of April 7th 1870.

| 90 | 311 |
| 199 | 179 |
| 199 | 183 |
| 199 | 184 |

3. The Act of April 9th 1867, provides, that service as county, city or borough superintendent of public schools shall be deemed a sufficient test of qualification, where the same person is re-elected. *Held*, that it is not an absolute test, and if objections are made to one re-elected, who, upon examination, is found unfit, he is not entitled to the office.

May 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, and TRUNKEY, JJ. PAXSON, WOODWARD and STERRETT, JJ., absent.

Error to the Court of Common Pleas of *Dauphin county :* Of May Term 1879. No. 29.

This was a petition for a mandamus, filed by Jeremiah E. Hawker, which set forth, in substance, that the petitioner had been elected, commissioned and served as the county superintendent of schools of Wayne county, and borough superintendent of common schools for Hyde Park in Lackawanna county; that being thus qualified the

petitioner was, on June 29th 1878, elected city superintendent of common schools of the city of Scranton, for the term of three years ; that a return of said election was duly filed, July 16th 1878, in the office of Hon. James P. Wickersham, superintendent of public instruction ; that thereupon it became the duty of said superintendent of public instruction, within thirty days from the filing of said return (no valid objection thereto having been received or made) to issue a commission to petitioner as said city superintendent, which had been refused, although requested, &c., and praying for a mandamus.

The answer of the superintendent of public instruction set forth that the court had not jurisdiction because :

" 1. The jurisdiction of the court to issue writs of mandamus is founded upon and contained in the Act of 14th June 1836, Pamph. L. 626, which provides as follows : ' The several courts of Common Pleas, the president judge being present, shall within their respective counties, have the like power with the Supreme Court, to issue writs of mandamus to all officers and magistrates, elected or appointed, in or for the respective county, or in or for any township, district or place within such county, and to all corporations being or having their chief place of business within such county.' Your respondent saith that he is not such an officer as is included within any of the classes above named, but is a state officer, and by the first section of art. 4 of the constitution becomes and is a member of the executive department of this Commonwealth.

" 2. It is true respondent received a certificate of the election of relator, but that respondent also, on the 17th of July 1878, received a statement of objections to the issuing of a commission to relator, which statement was signed by eight citizens and taxpayers of said city of Scranton, who were also members of the board of school control of said city, which averred that relator does not possess the literary and scientific acquirements demanded by the common-school law of the state, and required by the present condition of the public schools in said city, ' and that he did not possess a sound moral character, such as is contemplated in the Act of Assembly and as is imperatively demanded by public opinion and the high office in question ;' that it was the duty of the respondent, under sect. 13 of the Act of April 9th 1878, Pamph. L. 56, ' to appoint two competent persons, himself the third, to examine the person so elected county, city or borough superintendent ;' that he performed this duty, and the committee reported ' that after a careful examination they believe Mr. Hawker does not possess the literary qualifications specified by law, and which are required for the successful discharge of the duties of the office to which he has been elected.' "

The case was argued before Pearson, P. J., who delivered the following opinion :

[Commonwealth *v.* Wickersham.]

" The answer in this case raises two important questions: First, as to the jurisdiction of the court to issue the writ; second, as to the merits of the case. If we have no jurisdiction, it is unnecessary to inquire further. By the common law the writ of mandamus was looked upon as a high prerogative writ, which could be issued out of the Court of King's Bench alone, where the king was originally supposed to be sitting in person. The power to issue it did not exist in any inferior tribunal, and generally it was only allowed to prevent a failure of justice when the relator had no other legal remedy or one attended with great delay. By an early statute, Act of 22d of May 1722, the Supreme Court of this state was authorized to administer justice as fully and amply, to all intents and purposes whatsoever, as the justice of the Court of King's Bench, Common Pleas and Exchequer at Westminster, or any of them, may or can do. That law continued in force, and the process of that court to run throughout the state to secure justice to all men until the convention for forming a new constitution, in the plentitude of its wisdom, abrogated the power altogether without conferring it on any other tribunal. The third section of the fifth article gives authority to issue writs of mandamus to all inferior courts, but takes away original jurisdiction in all other cases. See Butler *v.* Hartranft, Governor, 27 P. F. Smith 154. No inconvenience was ever felt from the exercise of the power by the Supreme Court. We never heard of its abuse. The Courts of Common Pleas in the state never were authorized to issue the high prerogative writ of mandamus until it was conferred in a very limited form by the eighteenth section of the Act of June 14th 1836, which declares that they shall, within their respective counties, have the like power with the Supreme Court to issue writs of mandamus to all officers and magistrates elected or appointed in or for the respective county, or in or for any township, district or place within such county, and to all corporations being or having their chief place of business within such county. It is in these cases, and over these persons and corporations alone that the Courts of Common Pleas have jurisdiction.

" The superintendent of public instruction is not an officer elected or appointed in or for the respective county, or for any township, district, or place within such county, nor is he a corporation having his chief place of business within the county of Dauphin. He is a state officer, appointed by the governor, under the eighth section of the fourth article of the constitution, by and with the advice and consent of two-thirds of the senators, for a general state purpose, and the jurisdiction of his office extends throughout the Commonwealth, and we have precisely the same power over the attorney-general or secretary of the Commonwealth. The legislature never intended to give any such power to the inferior courts over the state departments. If this is thought necessary, in order to bring

the cases before the appellate court, it must be done by direct legislation. Original jurisdiction cannot be conferred on the Supreme Court in such cases. It is interdicted by the constitution. The want of jurisdiction in this court to us is so clear and plain that we would not have considered it necessary to say a word on the subject but for an expression to be found in the opinion of the Supreme Court, in Butler *v.* Hartranft, Governor, already cited, where the judge, in very properly lamenting the want of jurisdiction in the Supreme Court, as always theretofore enjoyed, says: 'This must drive every one to the seat of government, into a local court, to maintain the rights of the people against state officers, subject to all the delays which flow from the right of appeal.'

" We have no doubt that in writing the sentence in the haste of delivering an opinion, that generally very accurate judge did not advert to the fact that the court at the seat of government had no common-law jurisdiction over such officers, and that none was conferred by statute, therefore there was no possibility of getting the case into the Supreme Court by appeal. Although the books say that it is the business of a good judge to enlarge or amplify his jurisdiction, yet he must certainly not assume it, where it clearly never was conferred, and if there is a denial of right and a wrong without a remedy, yet, in the present case, it is clearly attributed to the constitution.

" The peremptory mandamus is refused, and petition dismissed for want of jurisdiction.

" Since writing the foregoing opinion, my attention has been directed to the first section of the Act of April 7th 1870, 'enlarging the jurisdiction of this court,' Pamph. L. 57–8, which had been overlooked by the court and counsel on both sides, and is supposed to have a bearing on the case. We are asked by the plaintiff's counsel to reconsider our opinion. The section declares 'that the Court of Common Pleas of the county of Dauphin, is hereby clothed with jurisdiction throughout the state, for the purpose of hearing and determining all suits, claims and demands whatever at law and in equity, in which the Commonwealth may be party plaintiff, for accounts, unpaid balances, unpaid liens, taxes, penalties *and all other causes of action, real, personal and mixed.*' Does that confer the power to issue writs of mandamus, or enlarge the limited power already conferred? Every part of the act, in all of its sections, clearly relates to the money concerns of the state, unless the words 'all other causes of action, real, personal and mixed,' which we have italicised, are designed to confer the authority. We can scarcely infer that the ordinary language used to give jurisdiction to collect money, recited in the other portion of the section, was intended to embrace a writ never used for such purposes, but to compel the performance of a duty where the party has no other legal remedy. It has been held, ' that if several

[Commonwealth *v.* Wickersham.]

words of a statute follow an enumeration of particular cases, they are held to apply only to cases of a like kind with those enumerated:' 5 McLean 178; 1 Brock. 526; 2 Wall., Jr. 72. Here accounts, unpaid balances, unpaid liens, taxes and penalties are the claims enumerated, and the words which follow, we conceive, relate to matters of a like character; not to authorize the court to use a high prerogative writ to oblige a co-ordinate branch of the government to perform what we might consider a duty, or to do an act in a particular way. Such a power should be clearly conferred in express language before it can be assumed. The second section enables a foreign attachment to be issued by the Commonwealth to secure the collection of its claims, and the third imposes a percentage, to be paid by delinquent debtors to the officers of the state who have been at the trouble of making the collections. All relate to money matters due the Commonwealth.

. "The title of the act furnishes little aid in its solution, for although entitled 'An act to enlarge the jurisdiction of the courts of Dauphin county, in cases where the Commonwealth may be plaintiff, and to provide for the issuing of writs of foreign attachment in such cases,' yet, the enlargement is to enable all suits to be brought at the seat of government instead of suing at the residence of the debtor, or where he might be found. The character of the enlarged jurisdiction is stated in the act itself.

"When the statute, or its title, speaks of the Commonwealth as plaintiff, it certainly refers to ordinary actions for the collection of money, not to the high prerogative writs authorized to be sued on the relation of an injured party, and although the name of the Commonwealth is used, yet, in such cases, the public is not the plaintiff, unless the state alone is interested. In such cases, we well might apply the legal maxim, that laws treating of persons or subjects of an inferior nature shall never be applied to those of a superior.

"The legislature, in 1870, when this law was enacted, never thought for a moment of giving the Court of Common Pleas of Dauphin county jurisdiction over state officers, for, at that time, it was fully vested in the Supreme Court, whose power extended throughout the Commonwealth. The jurisdiction of the county courts over this writ was extremely limited. It might now, with great propriety, be enlarged, as the only mode of reaching the Supreme Court, under the constitution, is by appeal. On the whole, I am of opinion, as before decided, that we have no power to issue the writ as prayed.

"No costs can be allowed to the defendant in this case, as it is a universal rule, except when changed by express statute, that where there is no jurisdiction there are no costs."

This decision was assigned for error by the petitioner, who took this writ.

[Commonwealth *v.* Wickersham.]

*Francis Jordan,* for plaintiff in error.—The judicial power of the state is conferred upon the courts by the first section of the fifth article of the constitution. The power to issue mandamus is a judicial power, and has been exercised by the courts for one hundred and fifty years. It is alleged that this power to issue mandamus was taken away by sect. 3, art. 5 of the constitution, which excludes mandamus from the original jurisdiction of the Supreme Court. The constitution, as quoted, confers upon the courts all jurisdiction, whether original or appellate. When the third section, therefore, took from the Supreme Court original jurisdiction in mandamus, it did not take any of its appellate jurisdiction, but, on the contrary, expressly retained it; and how could it exercise its appellate jurisdiction, if there were no court of original jurisdiction from which an appeal could be taken? The original jurisdiction in mandamus plainly exists in the lower courts : Commonwealth *v.* Hartranft, 27 P. F. Smith 154. The jurisdiction is also conferred upon the Court of Common Pleas of Dauphin county by the Act of April 7th 1870, Pamph. L. 57.

There was no occasion for a committee to act in this case, as the Act of April 9th 1867 provides, "that serving as county, city or borough superintendent shall be deemed a sufficient test of qualification."

*Lyman D. Gilbert,* Deputy Attorney-General, and *Henry W. Palmer,* Attorney-General, for the Commonwealth.—The words "judicial power" have certainly not the wide meaning given them by the plaintiff in error. If we admit his argument, that the right to issue a writ of mandamus is a "judicial power," then it follows that as none of the lower courts is excepted, all must have it, which certainly could not have been contemplated.

The proposition which asserts, that because the Supreme Court has appellate jurisdiction, therefore some court must have original jurisdiction of the writ of mandamus, so that an appeal may be taken, in such a case, to the Supreme Court, is overthrown by the language of the constitution. It is provided, in sect. 3 of art. 5 of the constitution, that the judges of the Supreme Court "shall have appellate jurisdiction by appeal, certiorari or writ of error, in all cases, as is now or may hereafter be provided by law." As there was no law, when the constitution was adopted, giving them appellate jurisdiction of writs of mandamus to state officers, and there has been none since passed, it is sufficient to say they do not possess it.

The Act of 14th June 1836 conferred upon the Courts of Common Pleas the only jurisdiction they possess over the writ of mandamus, and the cases in which they shall exercise that jurisdiction are those enumerated : Miller *v.* McCutchen, 2 Pars. 209 ; Whitemarsh Township *v.* Railroad Co., 8 W. & S. 366 ; Wolf *v.* Com-

[Commonwealth *v.* Wickersham.]

monwealth, 14 P. F. Smith 254.   The whole purpose of the Act of 1870 was to assist the Commonwealth in collecting its indebtedness.

The judgment of the Supreme Court was entered June 2d 1879,

PER CURIAM.—Upon the question of the jurisdiction of the Court of Common Pleas of Dauphin county to issue a mandamus to a state officer, we adopt the opinion of the learned president of the court below.

Apart from this question, we think, even if the court had jurisdiction, the relator did not show himself entitled to the mandamus for which he prayed.   It is true, that by the Act of April 9th 1867, it was provided that serving as county, city or borough superintendent shall be deemed a sufficient test of qualification, but the act also provides that, if upon examination of the evidence of competency it shall not prove to be such as is required, or if objection be made in conformity with the fourth section of the Act of April 17th 1865, the superintendent of common schools shall appoint two competent persons, himself being the third, to examine the person elected, and if upon such examination his qualifications are found insufficient, the commission shall not issue.   The answer of the respondent shows that such objections were made, the committee appointed, and a report made unfavorable to the relator.   It is clear, we think, that it is only where no objections are interposed, that the proviso, that serving as county, city or borough superintendent shall be deemed a sufficient test of qualification.   Such service may have shown that the candidate was entirely disqualified.

Judgment affirmed.