RAWLINS et al. v. HALL–EPPS CLOTHING CO. et al.

(Circuit Court of Appeals, Fifth Circuit. October 28, 1914.)

No. 2685.

1. BANKRUPTCY (§ 236*)—ORDER FOR EXAMINATION OF BANKRUPT—AUTHORITY OF COURT—TIME—"IN PROCESS OF ADMINISTRATION."

Under Bankr. Act July 1, 1898, c. 541, § 21a, 30 Stat. 552 (Comp. St. 1913, § 9605), authorizing the examination of a bankrupt and other witnesses concerning the acts or property of a bankrupt "whose estate is in process of administration," the court has authority to order such an examination at any time after the filing of a petition, although the proceedings are involuntary, and there has been no adjudication nor appointment of a receiver. The court, however, should not permit such examination to be perverted from the purpose it is intended to accomplish, which is the recovery of assets of the estate for distribution, to that of aiding the petitioning creditors in establishing their case for adjudication.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 393, 394; Dec. Dig. § 236.*]

2. BANKRUPTCY (§ 235*)—EXAMINATION OF BANKRUPT—PROCEEDINGS TO PROCURE—NOTICE.

An order for the examination of a bankrupt under Bankr. Act, § 21a, is not granted to petitioning creditors as a matter of right, and where, in involuntary proceedings, there has been no adjudication nor appointment of a receiver, should not be granted without giving the bankrupt notice and an opportunity to be heard.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 389, 395–397; Dec. Dig. § 235.*]

3. BANKRUPTCY (§ 235*)—EXAMINATION OF BANKRUPT—REASONABLENESS OF ORDER.

A general order requiring alleged bankrupts, who were mercantile partners and resided at a distance from the referee, to appear for examination prior to the adjudication, and to produce all their books of account and other writings and memoranda "from which might be ascertained any of the matters and things to be covered in said examination," held unreasonable and erroneous, as too broad in its terms.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 389, 395–397; Dec. Dig. § 235.*]

Petition to Superintend and Revise from the District Court of the United States for the Southern District of Georgia; Wm. B. Sheppard, Judge.

In the matter of J. C. Rawlins and S. J. Rawlins, partners as the Rawlins Mercantile Company, alleged bankrupts. Petition by bankrupts to superintend and revise an order for their examination procured by the Hall-Epps Clothing Company and others, petitioning creditors. Order reversed.

Alexander Akerman and Charles Akerman, both of Macon, Ga., for petitioners.

George S. Jones and Orville A. Park, both of Macon, Ga., for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before PARDEE, Circuit Judge, and GRUBB and CALL, District Judges.

GRUBB, District Judge. This was a petition to superintend and revise an order of the District Court for the Southern District of Georgia, directing the petitioners, hereafter designated "the bankrupts," against whom an involuntary petition in bankruptcy had been filed in that court, to appear before the referee in bankruptcy at Macon, Ga., to be examined as witnesses concerning the acts, conduct, and property of the bankrupt, which was a partnership composed of the petitioners, and with reference to the cause of its bankruptcy, its dealings with creditors and other persons, the amount and the whereabouts of its property, and in addition all matters which may affect the administration and settlement of the estate. The order further required the petitioners to produce for inspection and examination before the referee at the time and place of the examination all of the books of account of the bankrupt and other writings and memoranda from which might be ascertained any of the matters and things to be covered in said examination. The petitioners, the alleged bankrupts, filed an answer, denying insolvency and the commission of an act of bankruptcy, and demanding a jury trial for those issues. The order complained of was made before adjudication, and before the appointment of a receiver. The petitioners' residence and place of business was distant from Macon, the place of examination.

The order is assailed for three reasons, and it is contended by petitioners:

(1) That the court was without authority to make the order in advance of an adjudication and when no receiver had been appointed in the case.

(2) That the order was made without notice to the bankrupts, and without affording them an opportunity to be heard upon it before it was made.

(3) That the order was unreasonable in its terms, in that it required the production of all the books of account and other writings and memoranda from which might be ascertained any matters to be covered by the proposed examination, without specification or identification, except by way of a general conclusion.

[1] First. The authority for the examination is claimed to be found in section 21a of the act of 1898. The application was made by the petitioning creditors, as authorized by that section. The question is whether section 21a authorizes an examination of the bankrupt before adjudication and in the absence of the appointment of a receiver. This depends upon whether a bankrupt estate in that attitude can be said to be in the process of administration, within the meaning of that language in section 21a of the Bankruptcy Act. The Supreme Court of the United States in the case of Cameron v. United States, 231 U. S. 710, 34 Sup. Ct. 244, 58 L. Ed. 448, has held with reference to a voluntary bankruptcy, in which a receiver had been appointed, that:

"The estate of the bankrupt is in process of administration after the petition has been filed and a receiver appointed, and an examination may be ordered at any time thereafter under section 21a of the Bankruptcy Act."

While the decision may not be broad enough to extend to an involuntary bankruptcy and one in which there is no receivership, the reasoning of the court would indicate that the bankrupt court had authority to make such an order in an involuntary case in which no receiver had been appointed. Referring to the meaning of the words found in section 21a, "a bankrupt whose estate is in process of administration under this act," the court said (231 U. S. page 717, 34 Sup. Ct. 246, 58 L. Ed. 448):

"We are of opinion that the estate was in process of administration at the time when the examination before the commissioner was ordered and the testimony of Cameron given. This court has decided that the filing of the petition in bankruptcy operates to place the property of the alleged bankrupt in custodia legis and prevents any creditor from attaching it; and, although by the terms of the act the estate does not vest in the trustee until the date of the adjudication, it is placed at the time of the filing of the petition under the control of the court with a view to its ultimate distribution among creditors. Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 307 [32 Sup. Ct. 96, 56 L. Ed. 208]. And see Mueller v. Nugent, 184 U. S. 1, 14· [22 Sup. Ct. 269, 46 L. Ed. 405]; Everett v. Judson, 228 U. S. 474, 478, 479 [33 Sup. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154]. And this is true, notwithstanding, as contended by the petitioner, that, should the attempt to obtain an adjudication of bankruptcy fail upon the subsequent hearings, the receivership would necessarily be vacated and the property turned back to the alleged bankrupt."

This would seem to imply that the bankrupt estate was in process of administration, for the purpose of section 21a, from the time of the filing of the petition. The language of the Supreme Court seems to apply to an involuntary case as well as to a voluntary case. In view of the language of the opinion, we are not disposed to hold that the court below was without authority to grant an order for the examination of the bankrupts, under proper terms and conditions, before adjudication and in the absence of a receivership.

The purpose of the examination is to develop the whereabouts of assets of the estate for the purpose of aiding its administration, and not to enable the petitioning creditors to elucidate evidence to assist them in establishing the insolvency of the bankrupt or the act or acts of bankruptcy relied upon by them. This is quite manifest from the following language of the Supreme Court in the case quoted from (231 U. S. at pages 717 and 718, 34 Sup. Ct. 246, 58 L. Ed. 448), viz.:

"In order to arrive at the true meaning of section 21a, other provisions, as well as the purpose of the act, must be had in view. The object of the examination of the bankrupt and other witnesses to show the condition of the estate is to enable the court to discover its extent and whereabouts, and to come into possession of it, that the rights of creditors may be preserved. If such examination is postponed until after adjudication, which may not take place for at least 20 days, within which the bankrupt in involuntary bankruptcy is given leave to appear and plead, the estate may be concealed and disposed of, and the purpose of the act to hold it and to distribute it for the benefit of creditors defeated. The importance of such early examination or bankrupts was emphasized, in Re Fleischer [(D. C.) 151 Fed. 81], supra."

Section 3d of the Bankrupt Act (Comp. St. 1913, § 9587) covers the examination of the bankrupt and the production of his books, so far as the issue of his solvency or insolvency, is concerned. It is, by that section, made his duty to appear on the hearing, if he denies insolvency, and submit to an examination and produce his books; the penalty of failure being that the burden of proving his solvency shall rest upon him. The two examinations provided for by these two sections are distinct, and the purpose of each is different.

The bankrupt court should not permit the examination provided for by section 21a to be perverted from the purpose it is intended to accomplish, viz., the recovery of assets of the estate for distribution, to that of aiding the petitioning creditors in establishing their case for adjudication. It can only happen in rare instances that an examination under section 21a can be useful before adjudication and in the absence of a receivership for the purpose of recovering assets, since in that situation there would be no officer of the bankrupt court authorized to seize the assets, when discovered. However, we are not prepared to say that there might not be a case when the utility of such an examination for the purpose intended, even in the absence of a receivership, might not be shown.

[2] Second. The order complained of was granted on the ex parte application of the petitioning creditors, and without giving the bankrupts a hearing upon the application. The order for the examination is not granted, as a matter of right, to the petitioning creditors, certainly not before adjudication, and when the bankrupts are denying insolvency and the commission of any act of bankruptcy, and we think the bankrupts should have been given notice and the opportunity to be heard in resistance of the application, before it was granted.

[3] Third. The order required the bankrupts to produce "all of the books of account of said Rawlins Mercantile Company, and other writings and memoranda, from which may be ascertained any of the matters and things, hereinbefore mentioned, and to be covered in said examination." We think the order was too broad and uncertain in its requirements. The alleged bankrupts' place of business was distant from the place fixed for the examination. The requirement of attendance would, in itself, be burdensome. The production of many books and papers would add materially to the burden. The bankrupts may have been in business many years, and their books of account and other writings and memoranda referring to their business voluminous. Many of them might be immaterial to the issues involved in the bankruptcy proceeding, yet the order places the risk of nonproduction on the bankrupts. They are required, by its terms, to determine at their peril what books of account and other writings and memoranda are material to the ascertainment of any of the matters mentioned in the order and to be covered in the examination.

We think this was requiring too much of the bankrupts. They should have been apprised by the order itself what specific books, writings, and memoranda they were required to produce. Possibly a requirement to produce their present books of account would have been sufficiently definite, since what those books of account were was more pe-

culiarly within the knowledge of the bankrupts. The requirement was not so limited. It was only restricted by the materiality of the books and documents to the purpose of a future examination, the scope of which was unknown to the bankrupts except as disclosed by the terms of the order. We think that the order was unreasonable, in that it required the producton of books and documents without proper description to enable the bankrupts to know with sufficient certainty what specific books and documents they were expected to produce to comply with it, and was therefore equivalent to a requirement to produce all the books and papers belonging to their business. Such an order to produce encountered the condemnation of the Supreme Court of the United States in the case of Hale v. Henkel, 201 U. S. 43–76, 26 Sup. Ct. 370, 380, 50 L. Ed. 652, in the following language:

"Applying the test of reasonableness to the present case, we think the subpœna duces tecum is far too sweeping in its terms to be regarded as reasonable. It does not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all understandings, contracts, or correspondence between the MacAndrews & Forbes Company, and no less than six different companies, as well as all reports made and accounts rendered by such companies from the date of the organization of the MacAndrews & Forbes Company, as well as all letters received by that company since its organization from more than a dozen different companies, situated in seven different states in the Union. If the writ had required the production of all the books, papers, and documents found in the office of the MacAndrews & Forbes Company, it would scarcely be more universal in its operation, or more completely put a stop to the business of that company. Indeed, it is difficult to say how its business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary in the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpœna. Doubtless many, if not all, of these documents may ultimately be required; but some necessity should be shown, either from an examination of the witnesses orally, or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers. A general subpœna of this description is equally indefensible as a search warrant would be, if couched in similar terms. Ex parte Brown, 72 Mo. 83 [37 Am. Rep. 426]; Shaftsbury v. Arrowsmith, 4 Ves. 66; Lee v. Angas, L. R. 2 Eq. 59."

For these reasons, we think the petition to superintend and revise should be granted, and the order of the District Court on which it is based should be set aside, and the respondents be taxed with the costs of this court; and it is so ordered.