## MOBILE GAS CO. v. PATTERSON et al.

(District Court, M. D. Alabama, N. D., at Montgomery. April 14, 1923.)

1. **Motions ⬤⇒4—Repetition of motion once overruled not allowable.**

It is not within the right of a party to repeat a motion once ruled on.

2. **Discovery ⬤⇒97(1)—Motion for production of documents in equity must describe documents and show their materiality.**

Every motion in equity for the production of documents must describe the documents which it seeks to have produced, and must show that they contain evidence material to the movant's case, and must be accompanied by proof to this effect, and it is never permissible to order one party to a suit to produce all of its books and papers for examination by the other party.

3. **Searches and seizures ⬤⇒7—Requiring production of documents for fishing purposes violation of constitutional rights.**

To order one party to a suit to produce books and papers for examination by the other party, without their specific description and proof that they contain material evidence, would be in violation of the Fourth Amendment, which protects private papers from unreasonable search.

4. **Constitutional law ⬤⇒121—State estopped from repudiation of contract.**

Under Gen. Acts Ala. Sp. Sess. 1920, p. 38, authorizing the state Public Service Commission, on request of a utility and at its expense, to make a valuation of its property, which shall constitute a permanent basic valuation for future rate-making purposes, where the commission has made such valuation and the utility has paid for it, the matter is one of contract, protected from impairment by article 1, § 10, of the federal Constitution, and the state is estopped to repudiate such valuation in a subsequent suit.

5. **Constitutional law ⬤⇒121—State may not impair obligation of its own contracts.**

A state has authority to enter into contracts respecting public utilities, and may do so through a public board, and when such contracts are once made their obligation cannot be impaired by subsequent legislation.

Harry T. Smith & Caffey, of Mobile, Ala., for plaintiff.

Harwell G. Davis, Atty. Gen., and Hugh White, Asst. Atty. Gen., of Alabama, for defendants.

CLAYTON, District Judge. [1] The action of the special master in overruling the two motions filed by the defendants for an inspection of the books and papers of the plaintiff would have been justified without reference to the merits of the rights asserted. The first motion was not sworn to, and could not, therefore, be granted. The second motion was a substantial repetition of the first, after it had been overruled, and it is not within the right of parties to repeat motions which have already been ruled upon. These matters are merely formal, but as they would have been sufficient to justify the ruling of the special master in each instance the court could not properly overrule the ac-

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tion of the master, even if there were no other reasons for declining to do so; but the court has nevertheless considered these motions upon their merits, and finds that the ruling of the special master was correct in each instance, irrespective of these matters. The allegations of the first motion, which was filed on January 9, 1923, are to the effect that a very large part of the evidence necessary for the just and proper determination of the material issues in this case—

"is contained in the books, records, documents, and writings which pertain to and show all matters relative to the history and development of the Mobile Gas Company, complainant herein, and its property, the original costs thereof, and the cost of reproduction as a going plant, and which pertain to and show matters material to said inquirers as to the valuation of said property and as to the utility's cost of operation past and present, both all such books, records, documents, and writings pertaining to said utility or to said property, during and prior to the year 1905, as well as all such books, records, documents, and writings pertaining to said utility or to said property since the year 1906."

It is then averred that it is necessary, proper, just, and equitable—

"to have production made by plaintiff, its officers, servants, or agents, of all such books, records, documents, and writings at some reasonable place within the jurisdiction of this court, * * * and that the defendants, their consulting ·engineers and accountants, and their attorneys of record in this cause, have access to all such books, records, documents, and writings at reasonable times and in a reasonable manner and under such reasonable rules as may be prescribed by the special master, and for a period of, to wit, at least three months."

It will be observed that no particular books or records are described, and the court is not informed what evidence it is sought to discover, and it does not appear with any degree of certainty that there are any books containing evidence which would be material to the defendants' cause or which the defendants would use in evidence after it was obtained, and the motion is supported by no affidavit.

The motion filed on April 4, 1923, is subject to the same criticism. It is true that there is attached to the second motion an affidavit by the defendants, but it is not an affidavit to any fact, but merely to the correctness of the motion to, the best of the defendants' knowledge, information, and belief, without showing that they have any knowledge or information upon the subject. Such affidavit is, of course, wholly insufficient to predicate any action of the court in any matter in which proof is required.

[2] The rule is well established that every motion for the production of documents as a predicate for action by the court must describe the documents which it seeks to have produced, and must show that they contain evidence which is material to the movants' case, and must be accompanied by proof to this effect. Carpenter v. Winn, 221 U. S. 533, 31 Sup. Ct. 683, 55 L. Ed. 842; Gen. Film Co. v. Sampliner, 232 Fed. 98, 146 C. C. A. 287. It is never permissible to order one party to a suit to produce all of its books and papers for such examination by the other party. This is commonly known in the language of the books as "fishing," which is never permitted either in law or in equity. The defendants in this cause seek to escape the necessity of describing the books and documents which they desire to examine

and of other proof of their contents by referring to them as such as may contain the material evidence in the cause, so as to cast the burden upon the plaintiff of determining at their peril what ought to be produced and what withheld. Speaking upon this subject in the case of Rawlins v. Hall-Epps Clothing Co., 217 Fed. 884, 133 C. C. A. 594, the Circuit Court of Appeals for the Fifth Circuit said:

"The order required the bankrupts to produce 'all of the books of account of said Rawlins Mercantile Company, and other writings and memoranda, from which may be ascertained any of the matters and things hereinbefore mentioned, and to be covered in said examination.' We think the order was too broad and uncertain in its requirements. The alleged bankrupts' place of business was distant from the place fixed for the examination. The requirement of attendance would, in itself, be burdensome. The production of many books and papers would add materially to the burden. The bankrupts may have been in business many years, and their books of account and other writings and memoranda referring to their business voluminous. Many of them might be immaterial to the issues involved in the bankruptcy proceeding, yet the order places the risk of nonproduction on the bankrupts. They are required, by its terms, to determine at their peril what books of account and other writings and memoranda are material to the ascertainment of any of the matters mentioned in the order and to be covered in the examination."

In Oro Water Co. v. City of Oroville et al. (C. C.) 162 Fed. 975, the court, in discussing the production of documents for inspection, said:

"The theory upon which this court and courts of equity have always proceeded is that the party against whom discovery is sought has rights which must be protected. * * * Neither party has a legal right to examine all records and documents in his adversary's possession simply for the purpose of discovering whether they contain something which might benefit him, or to see in advance of the trial what evidence will be produced on the other side. Again, a court of equity should make no order blindly. It should command of no man anything which he has a legal right to refuse, and, when issued, its order should be specific and certain, leaving as little as possible to the discretion of the person or persons against whom it is directed. In cases of this kind there should be no uncertainty as to what documents are in the possession of the party against whom discovery is sought, and just what portion of them he should exhibit. The court should require the production of no evidence which is not competent and material, and within the legitimate issues of the case and in aid of the action or defense of him who seeks it."

In the case of United Mine Workers of America v. Coronado Coal Co., 258 Fed. 829, 834, 169 C. C. A. 549, 554 (C. C. A. 8th Cir.), in considering a motion to produce certain books, writings and documents, the court said:

"If the petition for the books and documents had failed to specify what books and documents were wanted, or did not make a sufficient showing of their materiality, so that the object was merely an attempt to obtain information, it would have been error to grant the petitions."

In the case of Caspary v. Carter (C. C.) 84 Fed. 416, the court, in considering the question of production of books, said:

"The only substantial allegations as to the materiality of the books whose production is asked is that they 'will tend to prove the issue in this action in the mover's favor,' and 'will tend to prove that the defendant in question did not make a bona fide contribution to the capital of the firm.' In other

words, the plaintiff does not seek discovery of facts, but of matters of evidence which it is supposed will have more or less tendency to establish facts. The extent to which the affidavit accompanying the plaintiff's application goes is that the affiant 'believes' the books called for will tend to prove as stated. No basis for the belief is given. The result is that, if the statute requires that this application be granted, it will always require that, on a mere affidavit of belief, each party to a suit at law may compel from the other party a general production of numerous books and papers in his possession, to enable the moving party to make the attempt to sift out of them circumstances, of more or less importance, tending to support his position as to the issues in the action. We would thus have a result fundamentally inconsistent with all hitherto known rules, whether at law or in equity— a power given to the adverse party, or to the court, to expose and search through a mass of private transactions with the mere hope of finding therein something relevant to the cause in issue. It is impossible for us to credit that the law is so sweeping as this, and no authority is produced to show that it is."

In the case of In re Romine (D. C.) 138 Fed. 837, 843, the court said in regard to the production of certain books in a bankruptcy proceeding:

· "It has been settled beyond peradventure for very many years that courts do not compel production of books simply to gratify curiosity, or permit 'fishing' excursions into them to see what can be found that may or may not be of advantage to the parties making the demand. 'A party cannot obtain a roving commission for the inspection or production of books or papers in order that he may ransack them for evidence to make out his case.'"

[3, 4] But the difficulty in granting the defendants' motion in this case goes even deeper than this, and is prohibited by the Fourth Amendment of the Constitution of the United States, as well as of section 5 of article 1 of the Constitution of Alabama, both of which protect the books and papers of a citizen from unreasonable seizure and search. In order that this may be apparent it is only necessary to review the history of this case as it appears from the pleading and from the evidence which had been offered before the special master up to the time of the presentation of the motion. The act of the Legislature of Alabama (Gen. Acts Sp. Sess. 1920, p. 38), conferring jurisdiction upon the Alabama Public Service Commission for the regulation of public utilities, provides in substance that upon request of the utility the commission should proceed to value its property in the method prescribed; that the utility should pay the expenses of such examination and that the valuation when fixed should constitute a permanent basic valuation for future rate-making purposes, unless set aside upon protest filed 30 days from the date thereof. By this statute the state of Alabama authorized the Alabama Public Service Commission to establish a permanent basic valuation for future rate-making purposes upon agreement of the utility to pay the expenses thereof. The commission was given authority from the state to establish a permanent basic valuation for consideration to be paid by the utility. The Mobile Gas Company accepted the offer by requesting the valuation. The commission established the valuation of $1,969,565, and in consideration thereof the utility paid to the state the expense of something over $2,000. The constitutional provision contained in section 10, article 1, of the Constitution of the United States, prohibits the impairment of the obligations of a contract, and is directed towards

the violation of contracts made by the state, as well as those which are made by individuals. Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395.

[5]. The state is authorized to enter into contracts in a matter of this kind, and this may be done through public board, and when such contracts are once entered into they cannot be violated by subsequent legislation. Richmond v. Louisa R. Co., 13 How. 71, 14 L. Ed. 55; Ohio Life Ins. Co. v. Debolt, 16 How. 431, 14 L. Ed. 997; N. O. Gas Co. v. La. L. & H. P. & M. Co., 115 U. S. 650, 6 Sup. Ct. 252, 29 L. Ed. 516; Reagan v. Farmers' Loan Co., 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Terre Haute & I. R. Co. v. Ketcham, 194 U. S. 579, 24 Sup. Ct. 767; 48 L. Ed. 1124; Detroit v. Detroit R. R., 184 U. S. 368, 22 Sup. Ct. 410, 46 L. Ed. 592; Detroit U. Ry. v. Detroit, 248 U. S. 429, 39 Sup. Ct. 151, 63 L. Ed. 341. It is difficult, therefore, to understand how the conclusion is to be escaped that the Alabama Public Service Commission and the state of Alabama, its principal, can now repudiate the valuation which it has itself established under this contract. It has accepted money of the Mobile Gas Company under the terms of the statute providing for the establishment of permanent basis valuation, and it is not in a position now to repudiate that valuation. Even if the state of Alabama or the Alabama Public Service Commission were not bound by the valuation so established by contractual stipulation, it would be difficult to justify the disregard thereof on the part of the state or its agent without first refunding the money which it has received in consideration thereof.

In the case of State v. M. & O. R. R. Co., 201 Ala. 273, 78 South. 48, 49, of the Supreme Court of Alabama quoted from the case of United States v. Willamette (C. C.) 54 Fed. 807, the following language:

"No good reason can be offered why the United States, in dealing with their subjects, should be unaffected by considerations of morality and right which ordinarily bind the conscience. The defense of estoppel stands upon different ground from that of laches."

Speaking of an estoppel against the action of the state, through its Legislature, it is said in the case of State of Indiana v. Milk et al. (C. C.) 11 Fed. 389:

"Resolute good faith should characterize the conduct of states in their dealings with individuals, and there is no reason, in morals or law that will exempt them from the doctrine of estoppel."

It appears from this statute that it was the duty of the Alabama Public Service Commission, upon the filing of a request by the Mobile Gas Company for a valuation of its property, to itself examine into all the questions pertaining to the valuation of this company's property which is now before this court, and that in performance of this duty it sent its engineers to Mobile to examine the properties of the company, and that its engineers were permitted to make such examinations as the commission had directed. It also appears that the commission subsequently sent its auditor to Chicago to make such examination of the books and records of the Mobile Gas Company as the commission directed. And it further appears that these engi-

neers and these accountants were given access to all that they sought to examine. Such examinations necessarily constitute great burdens to any utility that must submit thereto, and they ought not to be subjected to repetition thereof at the instance of the commission upon the theory that the commission and its representatives did not do their duty in making such examination thorough. To require a public utility to submit to an examination of its properties and of its records by engineers and accountants representing the commission and to pay them large sums of money for the expenses thereof in addition to the interruption of its business, which is incident thereto, and then again to require them to go through this same expensive proceeding, without any better reason than the allegation of the commission that its examinations were not sufficient to justify its own action, and that the proceedings which it has taken cannot be upheld without further fishing expedition through the same property and same writings savors of the oppression, and is within the spirit of the prohibition of the Fourth Amendment of the Constitution of the United States, and section 5 of article 1 of the Constitution of the state of Alabama. In the case of Hale (C. C.) 139 Fed. 496, the court uses this language:

"The petitioner was required to produce a numerous array of documents and papers for the purpose of ascertaining whether they contained anything which would tend to establish the commission of an offense by either of the two corporations; and it is apparent that the object was to enable the government by inspecting this mass of the private papers and documents of the petitioner's corporation, to find something which might induce the grand jury to find an indictment against his corporation. It is this which gives to the proceeding its color of oppression and the attributes of an unreasonable search and seizure."

In the case of Hale v. Henkel, 201 U. S. 45, 26 Sup. Ct. 370, 50 L. Ed. 652, the Supreme Court of the United States reviewed this same subject, holding that, while the state may make proper examination of the books and records of a public corporation, still such an examination may be made in such a manner or under such circumstances as to constitute unreasonable search and seizure. The court said:

"Indeed, it is difficult to say how its business could be carried on after it had been denuded of this mass of material, which is not shown to be necessary to the prosecution of this case, and is clearly in violation of the general principle of law with regard to the particularity required in the description of documents necessary to a search warrant or subpoena. Doubtless many, if not all, of these documents may ultimately be required, but some necessity should be shown, either from an examination of the witnesses orally or from the known transactions of these companies with the other companies implicated, or some evidence of their materiality produced, to justify an order for the production of such a mass of papers. A general subpoena of this description is equally indefensible as a search warrant would be if couched in similar terms."

The conclusion of the court, therefore, is that the motions in this cause cannot be granted, but must be denied, because they do not specifically describe the documents, the production of which they seek to require, and neither allege nor support by proof that they contain evidence material to the defense, and further because that which they seek is nothing more nor less than a "fishing" expedition through the records of the plaintiff in a manner which would constitute unrea-

sonable search prohibited by the constitutional provisions referred to, which could only be designed for the purpose of violating their own contractual obligation and in repudiation of that in consideration of which the state has received the plaintiff's money without a return thereof.

The motion is denied.