## Kelly, Secretary of Revenue, v. Harrisburg National Bank

*Manuel Kraus*, Deputy Attorney General, and *Charles J. Margiotti*, Attorney General, for petitioner.

*Hause, Evans, Storey & Lick*, contra.

HARGEST, P. J., July 29, 1937.—The Secretary of Revenue, averring that his petition is filed in accordance with section 1602 (*e*) of The Fiscal Code of April 9, 1929, P. L. 343, and stating that he made a demand pursuant to section 18 of the State Personal Property Tax Act of June 22, 1935, P. L. 414, which was refused, asks that the Harrisburg National Bank be required to permit a duly authorized representative of the Department of Revenue "to examine the records of collateral hypothecated with the said Harrisburg National Bank as of January 1, 1936, together with the records of security transactions of the said bank for the year 1935, for the purpose of determining the liability of any residents of this Commonwealth

for the personal property tax imposed by the Act of June 22, 1935, P. L. 414".

An answer was filed averring that section 18 of the State Personal Property Tax Act, supra, does not apply because the petition admits that the Department of Revenue has no knowledge that there is in the possession of defendant bank any collateral subject to tax for which a return has not been made, and said request does not mention any resident by name. The answer denies that section 1602(e) of The Fiscal Code, supra, authorizes such examination; avers that such examination would be in violation of section 21 of the Federal Reserve Act of December 23, 1913, 38 Stat. at L. 271, 12 U. S. C. §484, and that if section 1602(e) is broad enough to permit such examination it would violate section 8, art. I, of the Constitution of Pennsylvania, and section 1, art. XIV, of the Amendments to the Constitution of the United States.

The State Personal Property Tax Act of June 22, 1935, supra, imposes a tax of one mill on each dollar of the value of "All personal property of the classes hereinafter enumerated, owned, held or possessed by any resident".

Section 18 of this act provides, in part:

"(b) The department or any agent authorized, in writing, by it, is hereby authorized to examine the books, papers, and records of any resident in order to verify the accuracy of any return made, or if no return was made, to ascertain and assess the tax imposed by the third section of this act. Every such resident is hereby directed and required to give to the department, or its duly authorized agent the means, facilities, and opportunity for such examinations and investigations as are hereby provided and authorized. The department is hereby authorized to examine any person under oath concerning any property which was, or should have been, returned for taxation, and to this end may compel the production of books, papers, and records, and the attendance of all persons, whether as parties or witnesses, whom it believes have

knowledge of such property. The procedure for such hearing or examination shall be the same as that provided by 'The Fiscal Code' relating to inquisitorial powers of fiscal officers."

Section 1602(e) of The Fiscal Code of 1929 provides:

"If any person or corporation shall fail to comply with any summons of the . . . Secretary of Revenue, for the attendance of persons, or for the production of books, accounts, documents, or papers, or shall refuse to be sworn as a witness, or refuse to testify fully as such, or, if any person or corporation shall refuse to permit any person designated by the . . . Secretary of Revenue to inspect books, accounts, documents, or papers, as required by law, the . . . Secretary of Revenue, as the case may be, may apply by petition, in the name of the Commonwealth, to the court of common pleas having jurisdiction, and the court shall make such order, on reasonable notice to such person or corporation, as shall compel compliance with the law, and the violation of such order shall be a contempt of such court and punishable as such."

## Discussion

These quotations from the statutes show that section 1602(e) of The Fiscal Code provides the procedure to be followed when a proper demand is made under section 18(b) of the State Personal Property Tax Act. The Secretary of Revenue concedes that section 1602 of The Fiscal Code "limits the authority of the secretary to compel the exhibition of public accounts, documents and papers." He relies upon section 18 of the State Personal Property Tax Act of 1935, and contends that section 1602 of The Fiscal Code indicates the procedure by which the powers vested in the secretary by The Fiscal Code are to be exercised. The State Personal Property Tax Act gives authority "to examine the books, papers, and records of any resident in order to verify the accuracy of any return made, or if no return was made, to ascertain and assess the tax". The proposition here is not to examine the "books, papers,

and records of any resident". The Harrisburg National Bank is not a resident of Pennsylvania. The proposition is to examine every loan with hypothecated collateral and every "security transaction" made by the Harrisburg National Bank during the year 1935. The letter of the Secretary of Revenue addressed to the Harrisburg National Bank making the request, which is made part of his petition, is not limited to the account of any specific person or even to the accounts of residents of Pennsylvania, but is an omnium gatherum of all the collateral hypothecated with the bank on January 1, 1936, and all security transactions during the year 1935. This is nothing less than a request to browse around through the records of the bank to find whether, by some possibility, some taxable person may not have reported all of his taxable personal property.

The efforts of the tax dodger are not to be encouraged, and tax evasion should be condemned. The right of the State to obtain information for the proper assessment of taxes should, on the one hand, be liberally construed, but the constitutional rights of the citizen should likewise be vigorously maintained. To sustain the right the officer asserting it must point to some statutory authority. If there were an issue between the Commonwealth and a named or identified resident of Pennsylvania liable for taxes, it is altogether probable that the bank officers would be subject to appropriate process for the examination of the relevant records of such person for evidential purposes before a properly constituted tribunal. Section 18 of the State Personal Property Tax Act gives no greater authority than this. Here it is not averred that any resident has failed to report, but the only averment is that contained in the letter to the bank:

"In order to ascertain whether any securities made taxable . . . are held, owned or possessed by taxable individuals or partnerships it is necessary that the duly authorized representative . . . examine" the collateral and securities.

That is a declaration of an intention to embark upon a most extended fishing expedition, involving the security transactions of the bank for a year, and also all the collateral hypothecated with the bank on January 1, 1936, without any previous information that there are any fish in the pond. There is not the slightest suggestion that the department is in possession of any knowledge of any kind with reference to any taxable person that there has been any tax dodging or evasion.

The books are rather replete with cases denying the right of governmental agencies to go on fishing expeditions to secure evidence in efforts to carry out some provisions of the law. We are of opinion that section 18($b$) of the State Personal Property Tax Act limits the authority of the secretary to compel the production of books, papers, records, and attendance of all persons, whether as parties or witnesses to an actual investigation of a return of a particular taxpayer or to an actual investigation of a particular taxpayer who has not made a return: In re Chapman, 166 U. S. 661; Commonwealth v. Wickersham, 90 Pa. 311. The inquisitorial powers of the fiscal officers are somewhat akin to a subpœna duces tecum. In American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529, it is held:

"The same reasonable certainty in describing what is required, should be observed in a subpœna duces tecum, as is held necessary in the case of applications for orders to produce books and papers."

Mr. Justice Potter said, page 535:

"Anything in the nature of a mere fishing expedition is not to be encouraged. Where the plaintiff will swear that some specific book contains material or important evidence, and sufficiently describes and identifies what he wants, it is proper that he should have it produced. But this does not entitle him to have brought in a mass of books and papers in order that he may search them through to gather evidence. In 23 Am. & Eng. Ency. of Law (2d ed.) 179, it is said: 'The courts uniformly de-

cline to grant an application for production and inspection where it is merely for the purpose of a fishing examination, as where it is made to discover whether or not there is evidence contained in the documents which will be useful to the applicant, or for the purpose of determining whether he has a cause of action, or a defense, or in anticipation of a defense, or to gratify curiosity' . . . the witness ought not to be required to bring what is not needed, and he cannot know what is needed unless he is informed beforehand. . . . Demand for all books and papers for a business during three months held insufficient: Ex parte Brown, 72 Mo. 83(93). . . . It was unreasonable to ask for a blanket list of persons and firms with whom contracts had been made during the year."

In Dorris v. Morrisdale Coal Co., 215 Pa. 638, the executrix had in her possession a diary of the deceased. The court refused to admit it in evidence. The court said, page 645:

"There was nothing before the court to show that the diary in question contained anything pertinent and material to the defense. We are not aware of any statute, or rule of the common law, that authorizes a court to require the production of books and writings in the possession of the adverse party without proof that they contain evidence pertinent to the issue. . . . The defendant failed to bring itself within any recognized legal rule authorizing the court to require the production of the diary called for, and furthermore, the application was properly refused on the ground that it was manifestly for the purpose of a fishing examination of the decedent's diary to see if any evidence could be found in it to contradict his testimony".

We can see no difference in the legal principles to be applied in a subpœna duces tecum directed to some one other than the party in the case and an examination of the character proposed.

The relation between a bank and its depositor is a confidential one: Shelby v. Second National Bank of Union-

town et al., 19 D. & C. 202. In that case the Senate investigating committee was attempting to secure information concerning the bank records of S. Ray Shelby, a public service commissioner. An injunction was brought against the bank to enjoin the disclosure. The court held that the right of privacy extended to an individual's bank records and, quoting from Pavesich v. New England Life Ins. Co. et al., 122 Ga. 190, 194, 50 S. E. 68, 69, said:

"The individual surrenders to society many rights and privileges which he would be free to exercise in a state of nature, in exchange for the benefits which he receives as a member of society. But he is not presumed to surrender all those rights, and the public has no more right, without his consent, to invade the domain of those rights which it is necessarily to be presumed he has reserved than he has to violate the valid regulations of the organized government under which he lives. The right of privacy has its foundation in the instincts of nature. It is recognized intuitively, consciousness being the witness that can be called to establish its existence. Any person whose intellect is in a normal condition recognizes at once that as to each individual member of society there are matters private and there are matters public so far as the individual is concerned. Each individual as instinctively resents any encroachment by the public upon his rights which are of a private nature as he does the withdrawal of those of his rights which are of a public nature. A right of privacy in matters purely private is therefore derived from natural law."

See also Brex, etc., et al. v. Smith, etc., et al., 104 N. J. Eq. 386, 146 Atl. 34.

In Mays, etc., v. Davis, 7 Fed. Supp. 596, the internal revenue agent presented a petition in equity against the trust officer of the Union Trust Company of Pittsburgh for authority to examine the trust accounts of that company for the purpose of securing information as to income taxes. The court said:

"The power of the court to make the order desired is

limited as specified in said section 618 'for the purpose of ascertaining the correctness of any return or for the purpose of making a return where none has been made.' I am of the opinion that the petition is not authorized by section 618; that to grant the prayer thereof would be to grant a mere explanatory search for information on the part of the petitioner, and that not being within the law that the petition should be refused."*

Section 618 of the Federal Revenue Act of May 29, 1928, 45 Stat. at L. 791, is very similar to section 18 of the Pennsylvania State Personal Property Tax Act. This case is very much in point.

In Applegate v. State of Indiana ex rel., 158 Ind. 119, 63 N. E. 16, the statute provided:

"For the purpose of properly listing and assessing property for taxation and equalizing and collecting taxes, the . . . county assessor . . . shall each have the right to inspect and examine the records of all public offices and the books and papers of all corporations and taxpayers in this State, without charges."

The county assessor made a demand upon Applegate, the president of a bank, for permission to inspect the books and papers of the bank for the purpose of obtaining information to enable him to assess the moneys of depositors for taxation. Upon the refusal a mandamus was issued, to which a demurrer was filed. In sustaining the demurrer, the court said:

"Moreover, the amended alternative writ and petition are insufficient because the relator does not allege that any taxpayer who was a depositor in said bank . . . had omitted to make a proper return for taxation of all of his money so on deposit, or that the relator had just cause to believe that he had not done so. The alternative writ or the petition ought also to have alleged what taxpayer . . . had; as he believed, so omitted to make return of his money on deposit in said bank for taxation."

After this decision the legislature of Indiana passed a statute (Acts of 1901, p. 109) which required the specific

allegations to be set out in a petition such as the court indicated in the opinion were necessary. See further, Wallace et al. v. Hughes Electric Co. et al., 41 N. D. 418, 171 N. W. 840; Boyd v. United States, 116 U. S. 616.

In Federal Trade Comm. v. American Tobacco Co., 264 U. S. 298, there were petitions for writs of mandamus to require two corporations to produce records, contracts, memoranda and correspondence for inspection and for the making of copies in an investigation by the Federal Trade Commission of the tobacco situation as to domestic and export trade. In a very searching opinion by Mr. Justice Holmes, he said, inter alia, at page 305:

"The mere facts of carrying on a commerce not confined within state lines and of being organized as a corporation do not make men's affairs public, as those of a railroad company now may be. *Smith* v. *Interstate Commerce Commission*, 245 U. S. 33, 43. Anyone who respects the spirit as well as the letter of the Fourth Amendment would be loath to believe that Congress intended to authorize one of its subordinate agencies to sweep all our traditions into the fire (*Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447, 479), and to direct fishing expeditions into private papers on the possibility that they may disclose evidence of crime. . . . *It is contrary to the first principles of justice to allow a search through all the respondents' records, relevant or irrelevant, in the hope that something will turn up.* [Italics ours.] The unwillingness of this Court to sustain such a claim is shown in *Harriman* v. *Interstate Commerce Commission*, 211 U. S. 407. . . .

"The right of access given by the statute is to documentary evidence—not to all documents, but to such documents as are evidence. The analogies of the law do not allow the party wanting evidence to call for all documents in order to see if they do not contain it. Some ground must be shown for supposing that the documents called for do contain it. . . .

"The demand was not only general but extended to the records and correspondence concerning business done wholly within the State. This is made a distinct ground of objection. We assume for present purposes that even some part of the presumably large mass of papers relating only to intrastate business may be so connected with charges of unfair competition in interstate matters as to be relevant . . . but that possibility does not warrant a demand for the whole."

We paraphrase the last paragraph of the above quotation: The demand against the Harrisburg National Bank was general, extended to all of its records, which presumably include a large mass of papers relating to transactions of persons not residents of the State with the possibility that there might be some transactions of residents of the State which show that there was not a proper return for taxation, "but that possibility does not warrant a demand for the whole."

The only case which seems to support the petition in the instant case is that of First National Bank of Youngstown v. Hughes et al., 6 Fed. 737, decided in 1881, affirmed in 106 U. S. 523. In that case the bank complained that it was not subject to the visitorial powers of the auditor and prosecuting attorney of the county. The auditor issued an order upon the cashier of the bank to appear and give testimony and bring the books of account showing the amount of deposits on the day preceding the second Monday of April 1880, and the names of its depositors and amounts deposited by each. It was contended that this order was authorized by the revised statutes of Ohio and its purpose was to ascertain whether there was any money deposited in such institution subject to taxation within the county which had not been duly returned for that purpose by the owners. The court held that it would not enjoin proceedings in the State court. Upon appeal the Supreme Court of the United States, in a very cursory opinion, simply decided that there was nothing shown of record that the matter in dispute was of such amount as

to give it jurisdiction, and therefore upon motion the appeal was dismissed.

In the light of the authorities to which we have heretofore, and will hereafter, refer, we cannot adopt the reasoning of the last-cited case. We think it is distinctly contrary to the case of Federal Trade Comm. v. American Tobacco Co., supra, above discussed.

Moreover, the character of the examination demanded by the Secretary of Revenue would seem to constitute the exercise of visitorial power prohibited by Congress.

The Federal Reserve Act, supra, sec. 21, provides:

"No bank shall be subject to any visitorial powers other than such as are authorized by law, or vested in the courts of justice or such as shall be or shall have been exercised or directed by Congress, or by either House thereof or by any committee of Congress or of either House duly authorized."

In Guthrie v. Harkness, 199 U. S. 148, 157, it is said: "Visitation is . . .

"The act of examining into the affairs of a corporation." We are of opinion that the examination here demanded would violate this act of Congress, but we are not predicating our judgment upon this proposition.

It is contended that if the sections of the laws involved are construed to give the power sought to the Secretary of Revenue, that would offend against article I, sec. 8, of the Constitution of Pennsylvania, which provides:

"The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant"; and also against section 1, art. XIV, of the Amendments to the Constitution of the United States, which provides, in part:

". . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny

to any person within its jurisdiction the equal protection of the laws."

A corporation is within the protection afforded by both these constitutional provisions: Santa Clara County v. Southern Pacific R. R. Co., 118 U. S. 394; Riverside & Dan River Cotton Mills v. Menefee, 237 U. S. 189.

In Boyd v. United States, supra, pp. 627, 630, Mr. Justice Bradley, quoting from Lord Camden, said:

"Papers are the owner's goods and chattels; they are his dearest property; and are so far from enduring a seizure, that they will hardly bear an inspection; and though the eye cannot by the laws of England be guilty of a trespass, yet where private papers are removed and carried away the secret nature of those goods will be an aggravation of the trespass".

And referring to Lord Camden's opinion, Justice Bradley said:

"The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach further than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employes of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors, and the rummaging of his drawers, that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offense,—it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment."

In Zimmermann et al. v. Wilson, etc., et al., 81 F. (2d) 847, Government agents sought to compel the taxpayers' banker and broker to submit their records to examination for tax purposes where the income returns had been approved for three years without any claim of mistake or wrongdoing. The circuit court of appeals sustained an injunction to prevent such examination, on the ground

that it constituted an unreasonable search. Judge Buffington said at page 849:

"But, apart from all questions of constitutional protection of statutes of limitation . . . we regard the search here asserted as a violation of the natural law of privacy in one's own affairs which exists in liberty loving peoples and nations—for no right is more vital to 'liberty and the pursuit of happiness' than the protection of the citizen's private affairs, their right to be let alone. And that right extends to the records of his transactions from the unreasonable inspection and examination thereof by unwarranted governmental search."

There is a great wealth of authority, applied to the varying circumstances of each case, amplifying the principles which we have just quoted, and protecting the citizen against unreasonable searches and seizures, but it would extend this opinion to unreasonable lengths to quote from or discuss them at length. It is sufficient to say that our judgment is based upon the decisions and the reasoning in the following cases: Gould v. United States, 255 U. S. 298; United States v. Lefkowitz et al., 285 U. S. 452; United States et al. v. Union Trust Company of Pittsburgh, 13 Fed. Supp. 286; Federal Trade Comm. v. American Tobacco Co., supra; McGrain v. Daugherty, 273 U. S. 135; Hale v. Henkel, 201 U. S. 43; Ex Parte Jackson, 96 U. S. 727; Scott v. McNeal, 154 U. S. 34; Lowe v. Kansas, 163 U. S. 81; Carden et al. v. Ensminger et al., 329 Ill. 612, 161 N. E. 137; Shell Oil Co. v. Superior Court of Los Angeles County et al., 109 Cal. App. 75, 292 Pac. 531; State ex rel. v. Carpenter et al., 129 Wis. 180, 108 N. W. 641; Brex, etc., et al., v. Smith et al., 104 N. J. Eq. 386, 146 Atl. 34; Mobile Gas Co. v. Patterson et al., 288 Fed. 884.

In the instant case there may be large numbers of patrons who are nonresidents as well as those who are residents who in their confidential relations with the Harrisburg National Bank have deposited their collateral. This sweeping demand is to examine all the collateral and

security transactions, whether of residents or nonresidents, whether of taxpayers in Pennsylvania or not. A comity between the States might go to the extent of exchanging information, and, extending and, applying the principle that evidence lawfully acquired in a search involving one crime might be used to convict the possessor of such evidence of another crime, the State agents might exchange such information if it was thought it was beneficial to another State.

There is little difference in principle between invading a man's home to search his papers and records and invading the home office of the bank where he has temporarily and confidentially placed them. If the latter invasion could be sustained, we see no reason why an invasion of his lock-box in the bank could not also be sustained. The principle seems identical. In one case the Government agent looks at the record, in the other he looks at the securities themselves. As said in Ex Parte Jackson, supra, which enjoined postal officials from invading the secrecy of the letters and sealed packages in the mail:

". . . all regulations adopted as to mail matter of this kind must be in subordination to the great principle embodied in the fourth amendment of the Constitution."

Mr. Justice Bradley said, in Boyd v. United States, supra:

"And any compulsory discovery by . . . compelling the production of his private books and papers, to convict him of crime, or to forfeit his property, is contrary to the principles of a free government. It is abhorrent to the instincts of an Englishman; it is abhorrent to the instincts of an American. It may suit the purposes of despotic power; but it cannot abide the pure atmosphere of political liberty and personal freedom."

The Harrisburg National Bank is either a bailee or a trustee or may have a lien upon the securities of those who have had transactions with it. In any event, it is proper for the bank to protect those who confidentially entrusted those securities to it. If it had neglected so to

do, no notice having been given to any of the persons involved, it might have become liable to them for failure to protect their interests: Melloy's Sons v. Deal & Burtis, 124 Pa. 161.

We therefore conclude, paraphrasing the language of Hale v. Henkel, supra, p. 76:

"Applying the test of reasonableness to the present case, we think the *subpœna duces tecum* [the application in the instant case] is far too sweeping in its terms to be regarded as reasonable."

For these reasons the petition must be dismissed.

And now, July 29, 1937, the petition of the Secretary of Revenue for authority to examine the records of collateral hypothecated with the Harrisburg National Bank as of January 1, 1936, together with the records of security transactions of the said bank for the year 1935, for the purpose of determining the liability of any residents of this Commonwealth for personal property tax, is hereby dismissed at the cost of petitioner.